# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2021

Lyle W. Cayce
Clerk

No. 19-50888

Bradley Terwilliger; Benjamin Matcek;
Jimmy Dan Smith,

*Plaintiffs—Appellees*,

*versus*

Abelino Reyna, in his individual capacity;
Brent Stroman, in his individual capacity;
Manuel Chavez, in his individual capacity;
Robert Lanning, in his individual capacity;
Jeffrey Rogers, in his individual capacity,

*Defendants—Appellants*,

consolidated with

No. 19-50909

Ester Weaver; Walter Weaver; Sandra Lynch;
Michael Lynch; Julie Perkins; Justin Waddington,

*Plaintiffs—Appellees*,

*versus*

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

ABELINO REYNA, ELECTED DISTRICT ATTORNEY FOR MCLENNAN COUNTY, TEXAS, IN HIS INDIVIDUAL CAPACITY; BRENT STROMAN, CHIEF OF POLICE FOR THE WACO POLICE DEPARTMENT, IN HIS INDIVIDUAL CAPACITY; MANUEL CHAVEZ, WACO POLICE DEPARTMENT DETECTIVE, IN HIS INDIVIDUAL CAPACITY; ROBERT LANNING, IN HIS INDIVIDUAL CAPACITY; DET. JEFFREY ROGERS, IN HIS INDIVIDUAL CAPACITY,

*Defendants—Appellants*,

CONSOLIDATED WITH

_____

No. 19-50910

_____

DARYLE WALKER; MICHAEL WOODS; DON FOWLER; DAVID CEPEDA; KEVIN RASH; RICHARD KREDER; GREG CORRALES; BOBBY JOE SAMFORD; JIMMY SPENCER, JR.; CRAIG RODAHL; ARLEY HARRIS, III; RICHARD DAULEY,

*Plaintiffs—Appellees*,

*versus*

ABELINO "ABEL" REYNA, ELECTED DISTRICT ATTORNEY FOR MCLENNAN COUNTY, TEXAS, IN HIS INDIVIDUAL CAPACITY,

*Defendant—Appellant*,

2

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

CONSOLIDATED WITH

———————

No. 19-51029

———————

DARYLE WALKER; MICHAEL WOODS; DON FOWLER; DAVID CEPEDA; KEVIN RASH; RICHARD KREDER; GREG CORRALES; BOBBY JOE SAMFORD; JIMMY SPENCER, JR.; CRAIG RODAHL; ARLEY HARRIS, III; RICHARD DAULEY,

*Plaintiffs—Appellees*,

*versus*

BRENT STROMAN, CHIEF OF POLICE FOR THE WACO POLICE DEPARTMENT, IN HIS INDIVIDUAL CAPACITY; MANUEL CHAVEZ, WACO POLICE DEPARTMENT DETECTIVE, IN HIS INDIVIDUAL CAPACITY; ROBERT LANNING, IN HIS INDIVIDUAL CAPACITY; JEFFREY ROGERS, IN HIS INDIVIDUAL CAPACITY,

*Defendants—Appellants*,

CONSOLIDATED WITH

———————

No. 20-50032

———————

CHRISTOPHER EATON; OWEN BARTLETT; JAMES VENABLE,

*Plaintiffs—Appellees*,

*versus*

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

CHIEF BRENT STROMAN, IN HIS INDIVIDUAL CAPACITY;
DETECTIVE MANUEL CHAVEZ, IN HIS INDIVIDUAL CAPACITY;
ASSISTANT CHIEF ROBERT LANNING, IN HIS INDIVIDUAL
CAPACITY; DETECTIVE JEFFREY ROGERS, IN HIS INDIVIDUAL
CAPACITY; ABELINO "ABEL" REYNA,

*Defendants—Appellants*,

CONSOLIDATED WITH

_____

No. 20-50276

_____

THERON RHOTEN; JONATHAN LOPEZ; RYAN WILLIAM CRAFT;
JIM ALBERT HARRIS; BONAR CRUMP, JR.; JUAN CARLOS
GARCIA; DREW KING,

*Plaintiffs—Appellees*,

*versus*

CHIEF BRENT STROMAN, IN HIS INDIVIDUAL CAPACITY;
DETECTIVE MANUEL CHAVEZ, IN HIS INDIVIDUAL CAPACITY;
ASSISTANT CHIEF ROBERT LANNING, IN HIS INDIVIDUAL
CAPACITY; DETECTIVE JEFFREY ROGERS, IN HIS INDIVIDUAL
CAPACITY; DISTRICT ATTORNEY ABELINO REYNA, IN HIS
INDIVIDUAL CAPACITY,

*Defendants—Appellants*,

_____

4

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

JIM ALBERT HARRIS; BONAR CRUMP, JR; JUAN CARLOS
GARCIA; DREW KING,

*Plaintiffs—Appellees*,

*versus*

MANUAL CHAVEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
CHIEF BRENT STROMAN, IN HIS INDIVIDUAL CAPACITY;
ROBERT LANNING, IN HIS INDIVIDUAL CAPACITY; JEFFREY
ROGERS, IN HIS INDIVIDUAL CAPACITY; ABELINO REYNA, IN
HIS INDIVIDUAL AND OFFICIAL CAPACITY

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC 1:16-CV-599; 1:16-CV-1195; 1:17-CV-235;
1:16-CV-871; 1:16-CV-648; 1:17-CV-426

---

Before HIGGINBOTHAM, JONES, and HIGGINSON, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:

A deadly shootout occurred at the Twin Peaks restaurant in Waco, Texas, at a gathering of hundreds of motorcyclists, including gang members. The Plaintiffs here filed several lawsuits against Waco public officials based on their arrests and detentions following the rampage. The series of § 1983 suits alleged Fourth Amendment violations against Abelino Reyna, the then-District Attorney of McLennan County; Brent Stroman, Chief of the Waco Police Department; Robert Lanning, the Assistant Waco Police Chief; Manuel Chavez and Jeffrey Rogers, both Waco Police Department

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

detectives.[1]   The Defendants moved to dismiss asserting their qualified immunity and have appealed because the district court denied the motion in part.  Since the specific facts lodged in each case against the Defendants are largely identical and the appellate briefing nearly verbatim alike by both sides, this court consolidated the appeals.

Having considered the facts and arguments, we REVERSE and RENDER as to Defendants Stroman and Lanning, AFFIRM in part and REVERSE in part as to Defendants Reyna, Chavez, and Rogers, and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

The thirty-one plaintiffs were arrested after the Twin Peaks shooting for the felony charge of Engaging in Organized Criminal Activity ("EIOCA").   TEX. PENAL CODE § 71.02.   Some are members of "independent motorcycle clubs" and others unaffiliated with clubs.  They were detained at the scene immediately after the bloodbath or off premises later that day.

Hundreds of bikers representing numerous motorcycle clubs gathered for a meeting of the Texas Confederation of Clubs & Independents ("COC") on May 17, 2015 at the Twin Peaks restaurant in Waco, Texas.  Members of both the Bandidos Motorcycle Club and Cossacks Motorcycle Club were present.  Local law enforcement, aware of animosity between the Bandidos and Cossacks, monitored the meeting from the perimeter of the restaurant.

---

[1] Other defendants were included in the lawsuits, but only these particular appellants pursued an interlocutory appeal.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

Uniformed and undercover agents were present in an intelligence gathering capacity but had no evidence of planned violence. Nonetheless, violence erupted around noon. The ensuing shootout left nine victims dead and at least another twenty injured. Law enforcement officers, who had been forced to engage in defensive shooting, took control of the scene immediately after the violence and began investigating. Defendant Chavez was the detective in charge of the investigation.

After several hours, all COC attendees were transferred to the Waco Convention Center for questioning by law enforcement. Individual interviews continued well into the evening until the decision was made to arrest the motorcyclists who fit predetermined criteria—specifically, whether their support for or affiliation with the Bandidos or Cossacks was indicated by motorcycle club association and/or clothing, patches, key chains or other items.

Detective Chavez prepared and signed a form warrant affidavit which stated that:

> [O]n or about May 17, 2015, in McLennan County, Texas, the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.

> My probable cause for said belief and accusation is as follows:

> Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco, McLennan County Texas. Three or more members of the Bandidos Motorcycle clubs (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and

7

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by the Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, multiple persons where [sic] shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying the Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinct signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities.

After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.

Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.

The Plaintiffs were among 177 individuals arrested within the next several days using this form affidavit. Detective Chavez later testified that the names of those to be arrested pursuant to the warrant had been furnished to him. Eventually, only one case went to trial, a mistrial resulted, and the state dropped or reduced charges against the arrestees. No one has been prosecuted for the murders or injuries.

The Plaintiffs filed multiple § 1983 suits centering on their allegedly unlawful arrests without probable cause. Among others not covered here, one of their claims alleges that the Chavez affidavit facially failed to establish probable cause. *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092 (1986). A second claim asserted that intentional or reckless false statements in the affidavit resulted in a warrant lacking probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978). The Plaintiffs also pled § 1983 conspiracy and bystander liability claims.[2] The Defendants moved to dismiss on qualified immunity grounds, and District Attorney Reyna additionally claimed absolute prosecutorial immunity from suit. The district court dismissed the *Malley* claims as to all Defendants but denied the motion with

---

[2] For the first time on appeal, the Plaintiffs have raised a supervisory liability claim. We do not consider this untimely addition. Their argument that the complaint contained facts sufficient to put the Defendants on notice of the supervisory theory of liability is unpersuasive. An argument "not raised before the district court . . . is . . . 'waived and cannot be raised for the first time on appeal.'" *In re Deepwater Horizon*, 857 F.3d 246, 251 (5th Cir. 2017) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

respect to the *Franks*, conspiracy, and bystander claims. The Defendants then filed this interlocutory appeal based on the denial of qualified and absolute immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1986).[3]

## II. DISCUSSION

This court reviews *de novo* a district court's denial of a motion to dismiss on grounds of qualified or absolute immunity. *Morgan v. Chapman*, 969 F.3d 238, 244 (5th Cir. 2020). That ruling is a collateral order susceptible of immediate appellate review. *Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S. Ct. 834, 839 (1996). Our review is "restricted to determinations 'of question[s] of law' and 'legal issues,' and . . . do[es] not consider 'the correctness of the plaintiff's version of the facts.'" *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir. 2005) (quoting *Mitchell*, 472 U.S. at 528, 105 S. Ct. at 2816). Further, all well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiffs. *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* These standards are the same when a motion to dismiss is based on qualified immunity. *Dyer v.*

---

[3] No cross-appeal was filed to preserve the *Malley* claims.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

*Houston*, 964 F.3d 374, 379 (5th Cir. 2020). The crucial question is "whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 . . . and would overcome their qualified immunity defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015). It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

On appeal, D.A. Reyna asserts absolute prosecutorial immunity, and all Defendants claim qualified immunity from the Plaintiffs' *Franks* claim and other liability theories. We discuss each of these issues in turn.

## A. Absolute Immunity

Prosecutors are shielded by absolute immunity for activities "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and [] presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S. Ct. 984, 995 (1976). Absolute immunity is premised on the nature of the function performed by the prosecutor, not on the actor's title. *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545 (1988). Consequently, a prosecutor's absolute immunity does not extend to "advising the police in the investigative phase of a criminal case" where qualified immunity is sufficient. *Burns v. Reed*, 500 U.S. 478, 493, 111 S. Ct. 1934, 1943 (1991). Further, a prosecutor has no absolute immunity for personally attesting to the truth of evidence presented to the court or exercising judgment going to the truth or falsity of that evidence. *Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999) (discussing *Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502 (1997)).

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

The Plaintiffs allege that Reyna was the driving force behind the mass arrests and told Asst. Chief Lanning that "'all bikers wearing colors' should be arrested." Further, the Plaintiffs allege, Reyna was present at the scene "investigating the shooting" and "publicly acknowledged that he took the unusual step of assisting law enforcement and was involved in the actual investigation of the incident." The complaint states that "Reyna investigated the scene within hours of the incident, took photographs of the scene, reviewed information as it became known, and in all respects inserted himself in the role of an investigator/detective." The Plaintiffs allege that Reyna was continuously updated on May 17 as to the status of the investigation. Moreover, Reyna had access to video footage corroborative of law enforcement interviews that revealed many COC attendees, including many of those arrested, had no connection to the violence or parties involved in the violence.

Reyna acknowledges that he received information gleaned by Texas Department of Public Safety investigative interviews, which furnished the factual basis for the offense criteria used in the probable cause affidavits. He contends that in so doing, he was acting as an advocate supplying legal advice based on the investigators' facts. Were this the sum of his activities, it would fall comfortably within the protection of absolute immunity. *See Spivey,* 197 F.3d at 776 (discussing *Kalina,* 522 U.S. at 123–31, 118 S. Ct. at 505–10). Formulating factual criteria sufficient to satisfy probable cause from the investigative materials reflects a prosecutor's "suggesting legal conclusions on the facts already given." *Id.* Nor would this conclusion be contraindicated by the allegation that Reyna merely involved himself in the decision to arrest by informing Chief Stroman that there was "sufficient probable cause to

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

arrest any biker who was present and appeared by virtue of clothing or personal effects to be affiliated with the Bandidos or Cossacks."

As shown by the preceding recitation, however, merely giving legal advice was not the sum of Reyna's alleged conduct in personally investigating the scene of the fracas and taking photographs. That he was allegedly "[c]reating or manufacturing new facts" distinguishes Reyna's actions at the scene from those of an advocate supplying legal advice. *Id.* Moreover, although the ultimate import of this is less clear, the fact that Reyna was constantly in touch as the investigation proceeded and had access to allegedly exculpatory video and interview evidence, yet still decided to approve a global arrest warrant for EIOCA, implies that he "exercised judgement going to the truth or falsity of the evidence." *Id.* Taking the facts as pled in the light most favorable to the Plaintiffs, Reyna's conduct exceeded his prosecutorial function, and some of his actions were more akin to those of a law enforcement officer conducting an investigation. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S. Ct. 2606, 2616 (1993) ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." (internal quotations and citations omitted)). Based on the pleadings pertaining to his investigative activity, D.A. Reyna's immunity is limited to that of a law enforcement officer.

## B. *Franks* Liability

The Plaintiffs assert that the warrant affidavit signed by Detective Chavez was woefully deficient and false with respect to each of them, causing

13

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

their false arrests and extended detentions without probable cause. They contend that all of the Defendants can be held liable for the affidavits' shortcomings. Assessing these liability claims and the Defendants' responsive qualified immunity claims on the bare pleadings is difficult.

The Plaintiffs allege that these Defendants knowingly or with reckless disregard for the truth provided false information to secure the arrest warrants. *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684; *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997). The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc). Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits. *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (citing cases). Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted). But "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" *after* the "material that is the subject of the alleged falsity or reckless disregard is set to one side." *Franks*, 438 U.S. at 171–72, 98 S. Ct. at 2684.

14

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

The issues raised here by the Plaintiffs concern both the sufficiency of the affidavit signed by Chavez and the extent to which non-signer Defendants may be held responsible for any material false statements or omissions.

### 1. Sufficiency of the Affidavit

Probable cause is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 336, 370, 124 S. Ct. 795, 799 (2003) (internal citations and quotations omitted). It turns "'on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* at 371, 124 S. Ct. at 800 (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 2329 (1983)). Instead, courts must look to the "totality of the circumstances" and decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer" demonstrate "a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586, 588 (2018) (quotations and citations omitted). But while "[p]robable cause 'is not a high bar,'" *id.* at 586 (quotation and citation omitted), "the belief of guilt must be particularized with respect to the person to be searched or seized," *Pringle*, 540 U.S. at 371, 124 S. Ct. at 800.

We emphasize that standing alone, as the district court held, the warrant affidavit sufficiently alleged probable cause to arrest those to whom

15

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

its facts applied.[4] That members or associates of the Bandidos and Cossacks instigated and were involved in the Twin Peaks shootout, and that their conduct rose to the level of violating the EIOCA were conclusions reasonably and objectively drawn from the events of the day. Against this backdrop, however, the issue raised by the Plaintiffs' allegations is whether the facts and resulting "belief of guilt" were sufficiently particularized as to each of them. *Id.*

Broadly, the Plaintiffs can be sorted into two groups: those detained at the Twin Peaks and those arrested elsewhere. The latter group includes Bradley Terwilliger, Benjamin Matcek, and Jimmy Dan Smith, who were initially arrested away from the scene, in the parking lot of a closed business, on separate charges[5] and were re-arrested several days later on the EIOCA charge pursuant to the form affidavit. The remaining twenty-eight Plaintiffs were all detained at the scene. All thirty-one Plaintiffs challenge the sufficiency of the affidavit on essentially similar grounds. First, they deny affiliation with the Bandidos or Cossacks,[6] and any involvement with or membership in a "criminal street gang." They all claim that any jackets, vests, or insignia they were wearing were lawful and that their behavior before

---

[4] This court reviews probable cause determinations *de novo*. *United States v. Lopez-Moreno,* 420 F.3d 420, 430 (5th Cir. 2005).

[5] Terwilliger was arrested for unlawfully carrying a weapon ("UCW"). Matcek was arrested for UCW and criminal trespass. Smith was arrested and charged with "Directing Activities of Criminal Street Gangs." TEX. PENAL CODE § 71.023.

[6] Many, however, are members of other allegedly independent motorcycle clubs.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

and during the incident was lawful.[7]   Merely denying these facts is insufficient to establish colorable *Franks* liability, as is noted below.  But the Plaintiffs go further in alleging that the Defendants deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated with the Bandidos or Cossacks.

Assuming that the foregoing allegations constitute materially false statements or omissions in the warrant affidavit as to each Plaintiff, *Franks* requires the court to determine whether, excluding such errors and omissions, the remaining "corrected affidavit" establishes probable cause for the warrant's issuance. *Winfrey v. Rogers,* 901 F.3d 483, 495 (5th Cir. 2018) (citing *Franks,* 438 U.S. at 156, 98 S. Ct. at 2676).  In this case, the remaining particularized facts in the affidavit are that "[a]fter the altercation, the subject was apprehended at the scene, while wearing common identifying distinct signs or symbols."   And for the Plaintiffs not arrested on-scene, including Terwilliger who asserts he had no "common identifying distinct signs," the remaining uncontested facts are even slimmer.  Taking these allegations as true and viewing in them in the light most favorable to the Plaintiffs, the "corrected" content of the affidavit is insufficient to establish particularized probable cause for arrest based on supposed violations of the EIOCA.

---

[7] Terwilliger denies even having any patches, vest, jacket, or keychain indicating membership in a motorcycle club because he is not a member of any motorcycle club. Matcek claims he was not even present during the shootout.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

*Franks*, of course, requires more than bare assertions of falsehood. Instead, they "must be accompanied by an offer of proof . . . [and] point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. Evidence must be proffered and "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* While the Plaintiffs have met their burden of alleging a *Franks* violation sufficient to withstand the test of *Iqbal/Twombly*, if they press this litigation, they must offer tangible proof to overcome the "presumption of validity with respect to the affidavit supporting the . . . warrant." *Id.* Each Plaintiff must demonstrate that, as to him, the affidavit was deliberately or recklessly false.[8]

### 2. Extent of *Franks* Liability

In this circuit, a law enforcement officer "must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*." *Melton*, 875 F.3d at 263. If an officer does not present or sign the affidavit, liability attaches only if "he helped prepare the complaint by providing information for use in it." *Id.* at 264. The analysis must consider the role played by each defendant.

---

[8] *Franks* counsels that every statement in a warrant affidavit need not be "truthful" in an absolute sense. 438 U.S. at 165, 98 S. Ct. at 2681. This is because "probable cause may be founded upon hearsay and upon information received from informants, as well as information within the affiant's own knowledge that sometimes must be garnered hastily . . . [b]ut surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* Further, allegations of negligence or innocent mistake are insufficient. *Id.* at 171, 98 S. Ct. at 2684.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

Chavez, to begin, is within the compass of potential *Franks* liability because he signed the warrant affidavit and swore to the validity of the facts included in it. *Melton,* 875 F.3d at 263.[9]

Reyna, however, neither signed nor swore to the affidavit. Thus, *Franks* liability can only attach if he provided material information for use in the affidavit. The Plaintiffs plead generally that Reyna, among others, "caused an affidavit against each Plaintiff to be presented." Such conclusory language is insufficient standing alone. In more detail, the Plaintiffs plead that Reyna was provided with evidence both from the scene and interviews of attendees. But, acting contrary to the information provided to him, he stated that "all bikers wearing colors" should be arrested. Accordingly, and treating his function as that of an investigator, Reyna generated the basic facts set out in the probable cause affidavit. Thus, the Plaintiffs allege that Reyna "knew the exact wording of the affidavit" and knew or recklessly disregarded the fact that, based on the exculpatory evidence he had learned, probable cause did not exist to arrest some individuals potentially fitting the warrant's criteria. These allegations are sufficient to tie him to potential *Franks* liability.

Detective Rogers may also be implicated in potential *Franks* liability based on the pleadings. Taken in the light most favorable to their claim, the Plaintiffs allege he was a Waco Police Department gang detective who knowingly or with reckless disregard supplied false or materially misleading

---

[9] That Chavez may have received information from others when authoring the affidavit is not, contrary to the Plaintiffs' contention, material to his liability under *Franks*. *See supra* note 8.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

information identifying the Plaintiffs as members of or affiliated with "criminal street gangs."

Liability, however, is not sufficiently alleged as to Asst. Police Chief Lanning or Chief Stroman. Lanning was present at the Twin Peaks and, according to the pleadings, was "actively involved" in the investigation and aware of the entirety of the factual circumstances as well as the contents of the affidavit. But under *Melton*, "awareness" is not tantamount to "assisting" in the preparation of the warrant, much less the same as preparing or signing the affidavit. Further, the Plaintiffs fail to sufficiently allege that he "provided" material information. *Hart*, 127 F.3d at 448. Chief Stroman, as the pleadings acknowledge, was in touch with these events while out of town vacationing on the east coast. He was allegedly informed by Reyna that sufficient probable cause existed to arrest individuals fitting the established criteria and he subsequently approved the arrests. Consequently, the Plaintiffs only allege generally that he "caused" the affidavit to be presented. This connection is insufficient under *Melton* and *Hart*.

## C. Qualified Immunity

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, plaintiffs must successfully allege that the defendants "violated a statutory or constitutional right, and . . . that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear

20

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc). The key purpose is to create "fair warning," thus the "clearly established" prong can be satisfied "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 2516 (2002).

The Plaintiffs here assert the clearly established right to be free from arrest without a good faith showing of probable cause. *Winfrey*, 901 F.3d at 494. Further, it is clearly established that a warrant is not evidence of probable cause "if (1) the affiant, in support of the warrant, includes 'a false statement [made] knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"[10] *Id.* (quoting *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676).

As described above, accepting the Plaintiffs' well-pleaded allegations as true, we agree with the district court that the Plaintiffs state a plausible *Franks* claim against Defendants Chavez, Reyna, and Rogers. We do not opine further on whether the Plaintiffs may ultimately adduce evidence of these Defendants' deliberate or reckless misstatements or omissions

---

[10] Since the Warrants Clause dictates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," a warrant presumptively establishes probable cause. U.S. CONST. amend. IV, cl. 2. That presumption can be attacked, primarily through a claim under *Malley* or *Franks*.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

sufficient to prove the case and deprive the Defendants of qualified immunity.[11]

## D.  Alternate Theories of Liability

In addition to their *Franks* claim, the Plaintiffs also allege conspiracy and bystander claims.  Neither survives.  To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the . . . defendants to commit an illegal act" and "an actual deprivation of constitutional rights."  *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).  The complaint states that the Defendants "entered into a conspiracy to deprive Plaintiffs of their right to be free from unlawful seizure" and "acted in concert either to orchestrate or to carry out the illegal seizure . . . when they knew there was no probable cause to arrest them."  The complaint further states that the Defendants "caused a warrant to be issued" and were aware that Chavez was swearing to a false statement and "encouraged [him]."  Absent from the complaint is any sufficiently pled agreement to violate the Plaintiffs' constitutional rights.  "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.

Regarding bystander liability, this court has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's [constitutional violation] may be liable under

---

[11] We also do not opine on whether, to the extent Chavez and Rogers each relied on legal advice supplied by D.A. Reyna, they may not have had the *mens rea* necessary for a *Franks* violation.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  The Plaintiffs allege "that all of the individual Defendants (1) knew that a fellow officer was violating their rights by arresting them without probable cause; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act."  When first asserting bystander liability in their response to the motion to dismiss, the Plaintiffs described in two paragraphs the Fifth Circuit case law and the enumerated elements of the claim, but nothing more.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1966).  The district court erroneously allowed these claims to proceed.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment denying qualified immunity to Stroman and Laming is REVERSED and RENDERED.  The judgment denying immunity to Reyna, Chavez and Rogers is AFFIRMED IN PART as to potential *Franks* liability but REVERSED IN PART as to conspiracy and bystander claims, and the case is REMANDED for further proceedings.

23

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

STEPHEN A. HIGGINSON, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that the Plaintiffs have done enough to survive the motion to dismiss stage. But I disagree as to the theory on which they should be permitted to proceed. I therefore respectfully dissent as to part II.B-C.

In my view, the warrant affidavit at the center of this case has a *Malley* defect, not a *Franks* defect. This court has held that a warrant affidavit that facially lacks probable cause can't trigger the *Franks* analysis. *Blake v. Lambert*, 921 F.3d 215, 222 (5th Cir. 2019) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113-14 (5th Cir. 2006)). That is because if a warrant affidavit lacks probable cause on its face, any included false statement or omission can't be *material* to the existence of probable cause. *Kohler*, 470 F.3d at 1113 ("Th[e] materiality analysis presumes that the warrant affidavit, on its face, supports a finding of probable cause."). Thus, a facially deficient affidavit must be assessed under *Malley* rather than *Franks*. *Id.* at 1113-14.

The majority describes that "the warrant affidavit sufficiently alleged probable cause to arrest those *to whom its facts applied*." *Ante* at 15 (majority op.) (emphasis added). But therein lies the problem: the warrant affidavit does not tell us to whom the facts apply. I see no particularized probable cause on the face of the challenged warrant affidavit that connects the subject of the warrant to the crime of EIOCA that is alleged to have occurred. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (describing that probable cause "must be particularized with respect to the person to be searched or seized" (citation omitted)).

24

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

I agree with much of the majority's analysis. First, I agree with the majority that the warrant affidavit, on its face, supplies probable cause to conclude that unspecified members of the Bandidos and Cossacks committed EIOCA at the Twin Peaks shootout. *See ante* at 15 (majority op.). The affidavit is flush with general facts that describe the involvement of the Bandidos and Cossacks in the mayhem. However, the only statement in the affidavit that is specific to the subject of the warrant is the following: "After the altercation, the subject was apprehended at the scene, while wearing common identifying distinct signs or symbols."[1] Second, I further agree with the majority that this statement alone does not provide particularized probable cause to arrest any of the Plaintiffs for EIOCA. *See id.* at 17.

---

[1] This description is a slightly modified copy and paste of the definition of "criminal street gang" from the Texas penal code. *See* Tex. Penal Code § 71.01(d) ("'Criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership *who* continuously or regularly associate in the commission of criminal activities." (emphasis added)). Note that, in the warrant affidavit, the word "who" in the statute has been replaced with "or," rendering the full sentence grammatically nonsensical. *See ante* at 8 (majority op.).

Additionally, the warrant affidavit begins as follows:

> [O]n or about May 17, 2015, in McLennan County, Texas, the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.

*Id.* I understand this initial statement to be a description of the elements of the arresting offense—EIOCA—rather than a factual statement in support of probable cause. Indeed, the very next statement in the affidavit reads: "My probable cause for said belief and accusation is as follows." Thus, the description of the subject as "a member of a criminal street gang" is a legal conclusion rather than a factual statement that could form the basis of a *Franks* claim.

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

Crucially, the affidavit does not describe *what* "common identifying distinct signs or symbols" the subject was wearing, or even what group or association the signs or symbols purportedly identify. There is thus nothing in that statement that connects the subject to the Bandidos or Cossacks and the EIOCA that members of those groups were alleged to have committed at the Twin Peaks.

Given that the above statement is the *only* particularized statement about the subject of the warrant on the face of the affidavit, I am unable to find the particularized probable cause the majority says existed before it "correct[s]" the affidavit. *See id.* What materially false statement has been removed? Has a materially exculpatory fact been inserted that negates pre-existing probable cause? The majority does not say. If, for example, the affidavit had said that the subject of the warrant was a member of the Bandidos or Cossacks (or was wearing *their* signs and symbols), then that would be a material statement that Plaintiffs have plausibly alleged to be false. But there is no such statement. And without such a statement, particularized probable cause does not exist on the face of the warrant affidavit.

In fairness to the majority, the interlocutory nature of this appeal, which Defendants-Appellants have brought to challenge the district court's denial of qualified immunity with respect to a *Franks* theory of liability, does not afford the opportunity to squarely address the district court's dismissal of Plaintiffs' *Malley* claims, which, in my analysis, was erroneous. Neither party has briefed the issue of whether this panel could—or should—exercise pendant appellate jurisdiction over the dismissed *Malley* claims instead of

26

No. 19-50888 cons./w
No. 19-50909
No. 19-50910
No. 19-51029
No. 20-50032
No. 20-50276

awaiting an appeal on any eventual final judgment.[2] But rather than send this case back to the district court to have it travel further down a conceptually flawed road, I would reverse its decision denying qualified immunity on the *Franks* theory, leaving the Plaintiffs free to appeal their dismissed *Malley* claims in due course.

---

[2] Nevertheless, Plaintiffs-Appellees make clear in their brief to us that they do not intend to abandon their *Malley* claims; instead, they await a final judgment to properly appeal the district court's dismissal of those claims. I understand the majority opinion to prefer that this court address the dismissed *Malley* claims in the first instance via any appeal following a final judgment.